**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NIRMELA GOVINDA,<br><br>     Plaintiff,<br><br> v.<br><br>SUNTUITY SOLAR LIMITED LIABILITY COMPANY, *et al.*,<br><br>     Defendants. | Civil Action No. 22-06964 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Plaintiff Nirmela Govinda's Motion for Default Judgment as to Defendants Suntuity Solar Limited Liability Company (Suntuity) and Corefusion Solar, LLC (Corefusion) (Defendants, collectively) pursuant to Federal Rule of Civil Procedure (Rule) 55. (ECF No. 63.) Defendants have not opposed. The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED in part** with respect to liability and **DENIED in part** as to the amount of damages.

I.      BACKGROUND

   A.      Factual Background[1]

This case arises from allegations that Defendants forged Plaintiff's signature on a loan contract without her consent. In April 2022, Plaintiff began soliciting bids for the installation of solar panels on her home in Nutley, New Jersey. (ECF No. 1 ¶ 20.) After receiving several proposals, Plaintiff "decided to go forward with Defendants" based on their offer to install solar panels and a new roof for a total price of $46,375.26 financed at a 1.99% interest rate (April 2022 agreement).[2] (*Id*. ¶¶ 21-22; ECF No. 63-1 at 8.) Plaintiff would be subject to monthly payments in the amount of $122 over the course of twenty-five years and a single lump sum payment of $10,049 to be paid eighteen months after the sale.[3] (ECF No. 1 ¶ 22.) Plaintiff states that she agreed to the proposal in writing but, "recognizing that she only signed a[n initial] proposal, followed up with Suntuity several times." (*Id*. ¶¶ 23.) Despite never finalizing the contract, Defendants installed the panels on Plaintiff's roof. (*Id*. ¶ 25.)

In June 2022, Plaintiff received a call from GoodLeap, LLC (GoodLeap), a financing company that partners with solar companies.[4] (*Id*. ¶¶ 13, 26.) During that call, Plaintiff learned

---

[1] When a party is in default, the Court treats the factual allegations of the Complaint, except those related to damages, as true. *See Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir. 1990).

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3] Defendants also stated that after receiving state and federal tax credits aimed at reducing the cost of the solar panel installation, Plaintiff's "net system cost" would be reduced to $21,149. (ECF No. 1 ¶ 21.)

[4] While GoodLeap was a named Defendant in this case, the parties jointly stipulated to GoodLeap's dismissal on October 3, 2024, after reaching a settlement agreement. (*See* ECF Nos. 59, 60.)

"for the first time" that GoodLeap had financed her solar panel purchase pursuant to a contract that was purportedly signed by Plaintiff. (*Id*. ¶ 26.) Upon review of the Goodleap contract, which incorrectly named her as "Govinda Nirmela," Plaintiff observed that her signature and initials were forged. (*Id*. ¶ 35.) Furthermore, the GoodLeap contract, dated May 7, 2022, set forth different financing terms than the ones Plaintiff agreed to in the April 2022 agreement with Suntuity. (*Id*. ¶ 28.) The GoodLeap contract obligated Plaintiff to pay a total of $79,513.94—$33,138.66 more than Plaintiff agreed to in the April 2022 agreement—based on a 6.49% interest rate.[5] The contract also contained an arbitration clause, which Plaintiff states she did not agree to, and a fake email address, (*id*. ¶¶ 30, 33-34), which Plaintiff contends was an intentional effort to ensure that she "would not receive a copy of the contract on the day it was purportedly signed."[6] (*Id*. ¶¶ 31-32.) After receiving the forged GoodLeap contract, Plaintiff states that she reached out to Suntuity to again request that they provide a final contract. (*Id*. ¶ 36.) "[A]fter weeks of asking," Suntuity sent Plaintiff a contract dated May 9, 2022. (*Id*.) Plaintiff alleges that this contract also contained a forged signature, and incorrectly listed her name as "Govinda Nirmela." (*Id*. ¶¶ 37-39.) And, Plaintiff contends that while the contract states that the sale and installation of the solar panels were "subject to the Terms and Conditions set forth in the attached sheets[ ]," there were "no sheets [ ] attached." (*Id*. ¶ 38.)

---

[5]    The GoodLeap contract stated that Plaintiff would repay the loan via $200.40 for the initial 17 payments, followed by monthly payments of $269.89 for the subsequent 281 payments. (*Id*. ¶ 28.)

[6]    The email address listed in the contract was seansookdeo23@gmail.com. Plaintiff states that her husband's email address is very similar, except for the digits 23. (ECF No. 1 ¶ 30.)

### B. Procedural Background

Plaintiff filed this suit against Defendants on December 2, 2022, asserting claims under the federal Truth in Lending Act, 15 U.S.C. § 1638 and the New Jersey Consumer Fraud Act (NJCFA) N.J.S.A. 56:8-1 *et seq*. as well as for identity theft and forgery, N.J. Stat. Ann. § 2C:21-17.4 and common law fraudulent concealment/nondisclosure. (*See* ECF No. 1, 8-13.) Suntuity filed an Answer on February 15, 2023, and also filed a crossclaim for indemnification against Corefusion on July 11, 2023. (ECF Nos. 14, 24.) Corefusion filed an Answer on August 11, 2023. (ECF No. 32.)

After Corefusion entered the case, both Defendants attended an August 28, 2023 case management conference and agreed to discovery deadlines. (ECF No. 35.) On January 15, 2024, however, Plaintiff notified the Court of Corefusion's failure to comply with discovery obligations. (*See* ECF No. 38.) On February 1, 2024, Corefusion's counsel filed a Motion to Withdraw based on Corefusion's refusal to communicate or pay its attorneys. (ECF Nos. 43.) On February 29, 2024, Suntuity's lawyers followed suit, requesting to withdraw after learning that Suntuity had "suddenly ceased operations" and was therefore unable to fulfill its obligations with respect to the ongoing litigation. (ECF No. 48.)

The Court granted the motions to withdraw, but noted that Defendants, as corporate entities, "may not participate in this matter *pro se*." (ECF Nos. 46, 51.) The Court therefore ordered Defendants to have new counsel enter an appearance on their behalf within twenty-one days from the date of the Order. (*Id.*) Neither Defendant retained substitute counsel. Thus, on March 29, 2024, Plaintiff requested entry of default against Corefusion, which was entered on April 1, 2024. (ECF No. 52.) On November 21, 2024, Plaintiff requested entry of default against Suntuity, which was entered on November 22, 2024. (ECF No. 61.) On December 17, 2024,

Plaintiff filed a Motion for Default Judgment against both Defendants with respect to her NJCFA claim only.[7]  (ECF No. 63.)

## II. LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  Once a default is entered, the plaintiff may seek entry of a default judgment—either by the clerk or the court itself—under Rule 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *Directv, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  Because default judgment prevents the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages."

---

[7]  Plaintiff notes that she "reserves the right to pursue her other claims should Defendants choose to participate in the litigation." (ECF No. 63-1 at 5 n.3.)  To the extent that Plaintiff does proceed with her other claims, the Court notes that she may not recover additional damages against Defendants given the well-established principle precluding double recovery. See *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual.") (internal citations and quotations omitted). The Third Circuit has made clear "that a plaintiff whose case concerns a single course of conduct ... and a single injury ... [may not] recover those profits twice or thrice over for each legal theory advanced in favor of liability." *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 218 (3d Cir.1992).

5

*Directv*, 2006 WL 680533, at *1.  Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Id*. (citation and internal quotation marks omitted).

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties."  *The Prudential Ins. Co. of Am. v. Bramlett*, Civ. No., 2010 WL 2696459, at *1 (D.N.J. July 6, 2010).  Then, the "the Court must determine (1) whether there is sufficient proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper."  *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc.*, Civ. No. 19-13019, 2021 WL 1139873, at *2 (D.N.J. Mar. 24, 2021) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, Civ. No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)).  To determine whether default judgment is proper, the court evaluates "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  If these factors weigh in favor of the moving party, the court may grant default judgment.

### III.  DISCUSSION

#### A.  Jurisdiction and Service

Because Plaintiff asserts a federal Truth and Lending Act claim, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.[8]  The Court also has

---

[8]  28 U.S.C. § 1331 states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1367 extends federal courts' jurisdiction over ancillary state law claims that "derive from a common

personal jurisdiction, as both Defendants were properly served within the State of New Jersey pursuant to Rule 4. (*See* ECF Nos. 8, 18.) A federal district court sitting in New Jersey "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004); Fed. R. Civ. P. 4(k). "The primary method of obtaining *in personam* jurisdiction over a defendant in [New Jersey] is by causing the summons and complaint to be personally served within the state." N.J. Ct. R. 4:4-4(a). Under Rule 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). On December 6, 2022, Plaintiff served Suntuity via personal service by delivering a copy of the summons and complaint to Ruth Delia, a managing agent authorized to accept service on Suntuity's behalf. (ECF No. 3.) Plaintiff personally served Corefusion on February 20, 2023 by delivering a copy of the summons and complaint to Farrah Agha, who was a person authorized to accept service on behalf of Corefusion. (ECF No. 18.) And, indeed both Defendants filed Answers and appeared in this case.

B. **Sufficiency of Plaintiff's Cause of Action**

To state a claim under the NJCFA, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *United Cmtys., LLC v. Hallowell Int'l, LLC,* Civ. No. 11-2689, 2012 WL 5880295, at *2 (D.N.J. Nov. 21, 2012).[9]

---

nucleus of operative fact" as the federal law claim. *Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966).

[9] The NJCFA prohibits any act that is "unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission,

Plaintiff has pled each of these elements. First, the Complaint alleges unlawful conduct. The statute deems unlawful any false statement which is material to the transaction and made to induce the buyer to make the purchase. N.J. Stat. Ann. § 13:45A-16.2(a)(9)(ii). Plaintiff alleges that Defendants falsely represented to Plaintiff that a solar panel system could be purchased for a total of $46,375.26 based on a 1.99% interest rate. (ECF No. 1 ¶¶ 21-22; ECF No. 63-1 at 8.) Thereafter, Plaintiff alleges that Defendants, in connection with GoodLeap, forged Plaintiff's signature on a financing agreement obligating her to pay a total of $79,513.94 at a 6.49% interest rate. (ECF No. 1 ¶ 28.) Accepting Plaintiff's allegations as true, Plaintiff sufficiently alleges that Defendants engaged in affirmative acts of deception made unlawful under the NJCFA. *Allen v. V & A Bros.*, 26 A.3d 430, 440 (2011) ("The language of the [NJ]CFA specifically identifies a variety of affirmative acts, including 'deception, fraud, false pretense, false promise, [and] misrepresentation. . . .'").[10]

Second, Plaintiff has alleged an ascertainable loss in the form of the forged GoodLeap loan contract, which increased her debt obligation by $33,138.66 more than she bargained for pursuant

---

in connection with the sale or advertisement of any merchandise or real estate. . . ." N.J. Stat. Ann. § 56:8-2.

[10] Defendants' actions, as alleged in the Complaint, are also an explicit violation of the NJCFA's attendant regulations, which is considered a per se violation of the NJCFA. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (1994). The regulations require that any home improvement contract in excess of $500 be in writing, signed by all the parties, and include the total price to be paid by the buyer, including all financing charges. N.J. Admin. Code § 13:45A-16.2(a)(12). The regulation also prohibits any false sales representations with respect to home improvement contracts. N.J. Admin. Code § 13:45A-16.2(a)(9)(ii). Additionally, Defendants' forgery of Plaintiff's signature and initials in service of burdening Plaintiff with greater debt obligations is a violation of New Jersey's anti-forgery law. N.J. Stat. Ann. § 2C:21-1(a)(2). The Court notes that "[t]his District has specifically held that NJCFA claims may be alleged even when 'premised on violations of statutes and regulations either directly promulgated under the NJCFA or independent of the NJCFA where the conduct evidences unconscionable commercial practices.'" *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, 706 F. Supp. 3d 489, 506 (D.N.J. 2023) (quoting *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 563 (D.N.J. 2013)).

to the April 2022 agreement. In pleading a claim under the NJCFA, an ascertainable loss may be demonstrated by alleging "[a]n improper debt or lien against a consumer-fraud plaintiff" that is quantifiable. *Migliore v. Seibert*, Civ. No. 23-02623, 2024 WL 1327947, at *4 (D.N.J. Mar. 28, 2024) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 464 (1994)); *see also Warner v. Vision Solar LLC*, Civ. No. 22-5307, 2023 WL 4118348, at *3 (D.N.J. June 22, 2023) ("[A]n improper debt against a consumer-fraud plaintiff may constitute an ascertainable loss under the NJCFA since consumers are not obligated to fulfill a contractual indebtedness arising out of NJCFA violations.").

Finally, Plaintiff has shown a causal nexus between the unlawful conduct and the loss. Plaintiff alleged that she solicited bids from multiple companies and decided to move forward with Defendants based on the representations they made regarding the price. (ECF No. 1 ¶¶ 21-22.) Such allegations are sufficient with respect to this claim. *See Donachy v. Playground Destination Props., Inc.*, Civ. No. 10-4038, 2013 WL 3793033, at *6 (D.N.J. July 19, 2013) ("Allegations that a plaintiff would not have purchased a product 'but for' the misrepresentation or that they purchased the product 'because of' the misleading claim, are sufficient to plead causation at this stage." *Donachy v. Playground Destination Props., Inc.*, Civ No. 10-4038, 2013 WL 3793033, at *6 (D.N.J. July 19, 2013) (collecting cases).

### C.  Appropriateness of Default Judgment

Next, the Court must evaluate the appropriateness of default judgment by considering "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady*, 250 F.R.D. at 177. Here, all three factors weigh in favor of granting default judgment.

### 1. *Meritorious Defense*

Defendants each assert a handful of boilerplate affirmative defenses in their Answers to the Complaint. (See ECF Nos. 14, 32.) "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *U.S. v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir.1984) (citing *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951)). A defendant may not establish a meritorious defense with simple denials or conclusory statements—rather, the defendant "must assert 'specific facts' supporting its meritorious defense." *Wyndham Hotels and Resorts, LLC v. Rhonda & Sons, Inc.*, Civ. No. 10-02868, 2011 WL 831940, at *2 (D.N.J. Mar. 1, 2011) (quoting *Worldwide Assocs, Inc. v. Golden Mark Maintenance Ltd.*, 2000 WL 795894, at *2 (E.D. Pa. June 9, 2000)).

Here, Defendants' Answers do "nothing more than deny the individual factual allegations and raise boilerplate defenses in conclusory language." *See Trustees of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, Civ. No. 17-05739, 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021). Thus, even though Defendants' Answers raise multiple conclusory affirmative defenses, "that is not sufficient to avoid default judgment: the '[d]efendant need not prove that he will ultimately prevail at trial, but he must demonstrate that he has a facially meritorious defense, not one based on mere denials and conclusory language.'" *Id.* (citing *Phase 3 Media, LLC v. Drake*, Civ. No. 18-3387, 2018 WL 2723879, at *2 (D.N.J. June 6, 2018); *see also $55,518.05 in U.S. Currency*, 728 F.2d at 195; *Price Home Grp., LLC v. Ritz-Craft Corp. of Pa.*, Civ. No. 16-668, 2017 WL 5191807, at *4 (D.N.J. Nov. 8, 2017) (finding that the defendant does not have a meritorious defense based on their answer which "consists of simple denials and bare, legal defenses, without further elaboration or reference to the specific facts or the

underlying [agreement], and this Court has no other basis from which to extrapolate a defense"); *Shekia Grp., LLC v. Wholesale Cabinetry, LLC,* No. 2:17-CV-01477, 2020 WL 1272192, at *3 (D.N.J. Mar. 17, 2020) ("[T]he Court is unable to evaluate the merit of Defendants' affirmative defenses [set forth in their answer]. . . because Defendants completely failed to pursue and support these allegations."); *O'Brien v. Biobanc USA*, Civ. No. 09-2289, 2011 WL 2532465, at *5 (D.N.J. June 23, 2011) (holding that there is no meritorious defense because "[a]lthough the Answer denies a majority of the allegations in the Amended Complaint," it fails to allege "specific facts beyond simple denials or conclusory statements."). Therefore, the Answers fail to allege facts sufficient to support a meritorious defense.

### 2. *Prejudice to Plaintiff*

Second, Plaintiff is prejudiced by Defendants' failure to obtain counsel as she cannot pursue her claim for damages. *MicroBilt Corp. v. Bail Integrity Sols., Inc*., Civ. No. 19-637, 2022 WL 2910462, at *4 (D.N.J. July 21, 2022) (finding that "[u]nequivocally, the prejudice [against the plaintiff] is great" given the three-year delay stemming from the corporate defendant's failure to obtain counsel); *Newman v. Axiom Worldwide*, Civ. No. 06-5564, 2010 WL 2265227, at *5 (D.N.J. June 2, 2010) ("[P]laintiffs will be prejudiced if default judgment is not granted because they will not be able to seek damages for their injuries due to defendant's continuing refusal to comply with Court orders.") Without a default judgment, Plaintiff is left without recourse to recoup her losses. *G & G Closed Cir. Events, LLC v. Remsen Assocs., Inc*., Civ. No. 19-13019, 2021 WL 1139873, at *4 (D.N.J. Mar. 24, 2021) ("Here, Plaintiff suffers prejudice if it [does not] receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties.") (internal quotations and citations omitted).

### 3. *Culpability of Defendant*

Third, Defendants' failure to comply with the Court's Order allows the Court to infer culpability. *See Price*, 2017 WL 5191807, at *4 (finding that "it is clear that [the defendant]'s conduct in this matter is culpable" given the corporate defendant's failure to retain counsel despite the court's order and warning that failure to do so would result in default); *see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); *Simbraw, Inc. v. United States*, 367 F.2d 373, 373 (3d Cir. 1966) ("[A] corporation [must], to litigate its rights in a court of law, employ an attorney at law to appear for it and represent it in the court." (per curiam)). Defendants have offered no explanation for their failure to secure counsel, nor have they appeared in this matter in over a year. *See MicroBilt*, 2022 WL 2910462 at *4 ("[The defendant] is directly responsible for the delay in this matter" as they continued to ignore the court's order that they obtain counsel. Such "inaction can only be deemed willful and intentional") (internal quotations and citations omitted). Accordingly, the Court will enter default judgment against Defendants as to liability.

### D. **Damages**

Plaintiff must still prove damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (citation and internal quotation marks omitted)). Under Rule 55(b), a court need not accept allegations as to damages as true and may order a plaintiff seeking default judgment to provide additional evidence in support of its allegations. *Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While a court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b), a hearing may not be necessary "so long as [the Court] ensures that there is a basis

for the damages specified in the default judgment." *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016) (internal quotations and citations omitted).

Plaintiff alleges that she has an ascertainable loss of at least $33,138.66—the difference between the bargained-for April 2022 agreement with Defendants and the GoodLeap contract she claims she is subject to. (ECF No. 63-1 at 8.) Because the NJCFA mandates an assessment of treble damages against violators, N.J. Stat. Ann. § 56:8-19, Plaintiff seeks $99,416.04. (ECF No. 63-1 at 8.) However, Plaintiff has not provided the Court with any documentary evidence that would allow the Court to independently verify Plaintiff's proposed damages. *See In re Torres*, Civ. No. 09-34115, 2017 WL 3316052, at *37 (Bankr. D.N.J. June 15, 2017) ("Even upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought.") (quoting *Overcash v. United Abstract Grp., Inc.,* 549 F. Supp. 2d 193, 196 (N.D. N.Y. 2008)). Given the Court is not required to take Plaintiff's allegations regarding damages as true, the Court denies the Motion for Default Judgment on the issue of damages and directs Plaintiff to submit additional evidence. Plaintiff's supplemental submission should include any evidence regarding the amount Plaintiff actually paid to Defendants, any amount still outstanding on the GoodLeap contract, why there should not be an offset with regard to settlement payments, and the basis for any attorneys fees sought.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiff's Motion for Default Judgment (ECF No. 63) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: April 30, 2025

                                                                         **GEORGETTE CASTNER**
                                                                         **UNITED STATES DISTRICT JUDGE**